2025 IL App (4th) 241245

NOS. 4-24-1245, 4-24-1250

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 30, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| WENDY CLARK, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Jo Daviess County |
| THE CITY OF GALENA, an Illinois Municipal | ) | No. 22MR3 |
| Corporation; TRUE NORTH QUALITY HOMES, LLC, | ) | |
| an Illinois Limited Liability Company; and BIEN VIE, | ) | Honorable |
| LLC, an Illinois Limited Liability Company, | ) | John D. Hay, |
|     Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE GRISCHOW delivered the judgment of the court, with opinion.
Justices Lannerd and Vancil concurred in the judgment and opinion.

**OPINION**

¶ 1 In 2023, plaintiff, Wendy Clark, filed an amended complaint challenging zoning decisions made by defendant, the City of Galena (City). The complaint alleged various statutory and constitutional violations occurred in zoning decisions made by the City with respect to the rezoning of property and preliminary approval of a planned unit development (PUD) on land owned by defendants, True North Quality Homes, LLC, and Bien Vie, LLC (collectively, Developer). The trial court ruled against plaintiff on all but one count, ruling in favor of plaintiff on count VIII, a claim of a violation of procedural due process. The City and the Developer both appealed, arguing the court erred in finding a violation of procedural due process. The appeals were consolidated. We reverse the trial court's ruling on that issue.

I. BACKGROUND

¶ 3 Plaintiff's 11-count amended complaint sought declaratory and injunctive relief regarding a planned development zoning decision made by the City. Plaintiff alleged a number of statutory and constitutional violations by the City, including violations of substantive due process, violations of the City's zoning ordinance, impermissible spot and contract zoning, and, relevant to this appeal, violations of procedural due process. Count VIII of the amended complaint alleged the City conducted a series of public hearings wherein plaintiff and others were not offered or permitted the right to cross-examine witnesses and were thus denied procedural due process.

¶ 4 By agreement, the matter proceeded to trial on counts I through X. Count XI of the amended complaint, which alleged a claim of prospective nuisance against the Developer, was not included in the agreed bench trial and is not at issue in this appeal. The trial evidence was presented by agreement and stipulation, consisting of 26 exhibits, along with the exhibits attached to the amended complaint. There were no witnesses called. The following facts are derived from those exhibits.

¶ 5 In January 2022, an application for approval of a preliminary PUD plan was submitted on behalf of the Developer to the City, detailing plans to develop a resort called The Parker on approximately 80 acres of property owned by the Developer. The overall objectives of the project were to rehabilitate the historic Marine Hospital, develop new buildings and rental cottages, and create a vineyard, winery, gardens, and walking paths. The project involved five parcels of land. Three parcels were within city limits and zoned as limited agricultural. Two parcels were located outside of city limits, but upon annexation, they would default to limited

agricultural. The Developer sought annexation and rezoning from limited agricultural to a PUD, with an underlying district of planned commercial.

¶ 6　　　　Pursuant to the Galena Municipal Code, the zoning board of appeals conducted a public hearing on February 9, 2022, to consider the request for preliminary approval of the PUD and the attendant rezoning. Everyone who wanted to speak at the public hearing was sworn in by a city attorney. The chairperson outlined the format of the meeting:

> "Just so everyone knows, the applicant will go first in the public hearing. Then the board can ask questions of him. And then after that those in favor will speak. Questions will be asked. And then people in opposition will speak. And then the applicant also has a right to come back and answer any of those questions we may have, all right? And then after that, we'll close the public hearing. I just ask that you state your name for the record and your address."

¶ 7　　　　At the public hearing, which lasted almost four hours, the applicant, on behalf of the Developer, addressed the zoning board first, and he was followed by proponents of the project. Members of the zoning board asked questions about the details of the project. Those in opposition to the project were then invited to speak. Plaintiff spoke first in opposition to the project. She argued the project was not in accordance with the City's land use and comprehensive plans, and she detailed several concerns with approving the commercial project next to residential homes. Those concerns included increased traffic, which impacted safety concerns, including the availability of emergency services; increased light and noise; impacted water and sewer services; and increased runoff and flooding. Plaintiff was not limited in her time to speak, and the zoning board did not have any questions for plaintiff. Several other neighbors and interested parties also spoke in opposition to the project. After the testimony of those

opposing the application, the Developer spoke again, addressing some of the issues raised in the comments from the opponents. The Developer clarified that the fire chief, the police chief, and emergency medical services had been consulted regarding the project. Also, addressing concerns about the utilities necessary for the project, the Developer noted the facilities plan for water and sewer had been updated since the comprehensive plan was last updated in 2003. The opposition was invited to respond in rebuttal, and plaintiff was the only speaker.

¶ 8　　　　The zoning board then closed the public hearing and considered each element of the approval criteria for a zoning code amendment and rezoning contained in section 154.920(C) of the City's Code of Ordinances (Galena Municipal Code § 154.920(C) (adopted Apr. 11, 2005)). The final vote of the zoning board on whether to send a positive recommendation to the city council to approve the proposed preliminary PUD plan, annexation, and related rezoning was 3 to 2 in favor of recommending the application and rezoning. As four votes in favor were required to send a positive recommendation to the city council, the zoning board did not send any recommendation to the city council.

¶ 9　　　　The matter then proceeded to the city council for final action on February 28, 2022. Several citizens, including plaintiff, spoke in opposition to the application. Each member of the city council confirmed they had reviewed the application and the record from the zoning board public hearing. Since a petition protesting the rezoning had been filed, a vote of two-thirds of the city council was required to adopt a motion to approve the preliminary PUD plan and rezoning application (*id.* § 154.920(D)(2)). Each council member addressed each element of the approval criteria for zoning amendments and rezoning (*id.* § 154.920(C)). Then, each council member addressed the community benefit elements required to approve a preliminary PUD plan (*id.* § 154.923(a)). Ultimately, the city council voted to approve the request for preliminary

approval and rezoning to a PUD. Thereafter, annexation and rezoning ordinances were enacted. City of Galena Ordinance Nos. O.22.11 (approved May 23, 2022) (annexing property into the City), and O.22.12 (approved May 23, 2022) (amending the zoning map from limited agriculture to PUD).

¶ 10 Several months later, the Developer sought to amend the preliminary PUD plan to include the annexation of additional property and related changes. The same procedures were followed before the zoning board. The hearing on November 9, 2022, began with statements by the Developer and others in support of the amendment, and members of the zoning board asked questions of the proponents. Then opponents of the amendment were allowed to speak, and plaintiff was the first speaker. Members of the zoning board asked questions of the speakers, and the speakers were allowed to answer. Plaintiff participated in responding to one of the questions. The Developer then gave a rebuttal to the opposition testimony and was also questioned by members of the zoning board. Plaintiff spoke again in rebuttal. After considering each of the approval criteria for zoning amendments and rezoning, the zoning board voted to recommend approval of the amendment to the city council.

¶ 11 At the city council's public hearing on November 14, 2022, which lasted almost five hours, several people, including plaintiff and a realtor, spoke in opposition to the amendment. Plaintiff spoke again in rebuttal. The city council voted to approve the amendment to the preliminary PUD plan and annex the additional property into the PUD plan. City of Galena Ordinance Nos. O.22.24 (approved Nov. 29, 2022) (authorizing the execution of the first amendment to the annexation agreement); O.22.27 (approved Nov. 29, 2022) (annexing the additional property into the City); O.22.28 (approved Nov. 29, 2022) (amending the zoning map to include the additional property in the PUD).

- 5 -

¶ 12        Following the stipulated bench trial, the trial court issued a ruling in favor of the City on counts I through VII, IX, and X. The court determined plaintiff did not prove by clear and convincing evidence a violation of substantive due process. However, the court ruled in favor of plaintiff on count VIII, which alleged violations of procedural due process in the hearings on the PUD application and the PUD amendment. The court ruled that plaintiff was an interested party whose property rights were at issue, so she must be afforded the due process rights normally granted to individuals whose property rights are at stake. The court held that plaintiff proved by clear and convincing evidence that the City violated her constitutional procedural due process rights when she was not afforded the opportunity to cross-examine adverse witnesses. On the basis of the procedural due process violation, the court declared void all of the zoning amendments, enactments, or ordinances that resulted from the zoning board hearings on February 9 and November 9, 2022.

¶ 13        The Developer and the City filed motions to reconsider the ruling in favor of plaintiff on count VIII. They also challenged the relief granted by the trial court, arguing that, even if the judgment in favor of plaintiff stands, voiding annexation decisions and ordinances was not sought by plaintiff and was not warranted. The motions to reconsider were granted in part and denied in part. The court rejected the arguments made by the Developer and the City that *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164 (2002), was no longer good law and, as the result of the passage of subsequent legislation, a rational basis test only mandated that plaintiff be afforded notice and an opportunity to be heard to satisfy procedural due process. The court held that although the subsequent legislation changed the type of review, it did not affect the constitutional procedural due process rights of the parties and did not nullify the precedent established in *Klaeren* that a party with an affected property interest has the right to cross-

examine adverse witnesses at a public hearing for a special use request. Thus, the court denied that part of the motions to reconsider. The court granted the motions in part, though, with respect to the relief granted. It agreed it was error to order the vacation of the City's annexation ordinances because that remedy exceeded the relief sought by plaintiff. In addition, criteria for annexation are separate and distinct from the zoning issues and procedural due process issues considered by the court. Thus, the court vacated the portion of its prior order declaring the annexation ordinance and the amendment to the annexation ordinance void.

¶ 14    The trial court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay enforcement or appeal. The City and the Developer both appealed the judgment in favor of plaintiff on count VIII of the amended complaint.

¶ 15                    II. ANALYSIS

¶ 16    The sole issue raised on appeal before this court concerns the trial court's judgment in favor of plaintiff on her claim that, in the process of approving the preliminary PUD plan and related rezoning ordinances, the City deprived plaintiff of her procedural due process rights when she was not afforded the right to cross-examine the Developer at the zoning board meetings.

¶ 17                A. Judicial Review of Zoning Decisions

¶ 18    Generally, municipal bodies act in a legislative capacity when they conduct zoning hearings and make zoning decisions. *Klaeren*, 202 Ill. 2d at 182. Judicial review of those legislative actions is not subject to principles of administrative review, and review is limited to determining whether the actions are constitutional as a matter of substantive and procedural due process. *Conaghan v. City of Harvard*, 2016 IL App (2d) 151034, ¶ 53; see *City of Chicago*

- 7 -

*Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 14 (2001) (A legislative body's decision made in a legislative capacity "is reviewed for arbitrariness as a matter of substantive due process under the six-part test set forth in *La Salle National Bank v. County of Cook*, 12 Ill. 2d 40 (1957)."). In this context, compliance with zoning ordinance criteria is merely a factor to consider in determining whether the decision was arbitrary and unreasonable. *City of Chicago Heights*, 196 Ill. 2d at 14.

¶ 19 Traditionally, courts have recognized a distinction between those legislative actions that involve general facts and are for the purpose of promulgating policy-type decisions and actions that are administrative or quasi-judicial, which are based on adjudicated disputed facts and affect a small number of persons. *Millineum Maintenance Management, Inc. v. County of Lake*, 384 Ill. App. 3d 638, 641 (2008). When municipalities act in this administrative or quasi-judicial capacity, their actions are subject to principles of administrative review. *Id.* at 642. Under general principles of administrative review, courts review all questions of law and fact presented by the administrative record before the court. *Id.* at 641; 735 ILCS 5/3-110 (West 2022). The decision of the municipality "may be reviewed to determine whether the decision was made in compliance with any criteria listed in the zoning ordinance." *City of Chicago Heights*, 196 Ill. 2d at 13-14. A trial court may reverse the administrative decision only where it determines (1) the agency's findings of fact were against the manifest weight of the evidence; (2) based on a *de novo* review, the agency made a mistake of law; or (3) the agency's application of the facts to the law the agency is charged with administering was clearly erroneous. *Millineum Maintenance Management*, 384 Ill. App. 3d at 641-42.

¶ 20 Recognizing this dichotomy, in *Klaeren*, the Illinois Supreme Court concluded that when municipalities conduct zoning hearings that concern special use permits, they are

acting in an administrative or quasi-judicial capacity and the resulting decisions are subject to administrative review. *Klaeren*, 202 Ill. 2d at 183.

¶ 21        In response to *Klaeren*, the legislature enacted Public Act 94-1027 (eff. July 14, 2006), which added, *inter alia*, section 11-13-25 to the Illinois Municipal Code (65 ILCS 5/11-13-25 (West 2006)). *Millineum Maintenance Management*, 384 Ill. App. 3d at 644 (discussing the similar section 5-12012.1 added to the Counties Code (55 ILCS 5/5-12012.1 (West 2006) by the same public act). Section 11-13-25 of the Municipal Code states:

> "(a) Any decision by the corporate authorities of any municipality, home rule or non-home rule, in regard to any petition or application for a special use, variance, rezoning, or other amendment to a zoning ordinance shall be subject to *de novo* judicial review as a legislative decision, regardless of whether the process in relation thereto is considered administrative for other purposes. Any action seeking the judicial review of such a decision shall be commenced not later than 90 days after the date of the decision.

> (b) The principles of substantive and procedural due process apply at all stages of the decision-making and review of all zoning decisions." 65 ILCS 5/11-13-25 (West 2022).

¶ 22        The plain language of section 11-13-25 of the Municipal Code, along with the legislative history of Public Act 94-1027, demonstrates the legislature's intent was to nullify the effect of *Klaeren* with respect to all county or municipal decisions on the types of zoning matters listed in the statute, so that all those matters would receive judicial review as indicated in the statute instead of as indicated in *Klaeren*. See *Millineum Maintenance Management*, 384 Ill. App. 3d at 647 (interpreting similar provision of the Counties Code); see also *Dunlap v. Village*

*of Schaumburg*, 394 Ill. App. 3d 629, 642 (2009) (stating an amendment to section 11-13-25(a) of the Municipal Code was to clarify that when such challenges are properly made, the decisions are to be reviewed under the standards for legislative rather than administrative action). So, while between two types of judicial review, administrative or legislative, the supreme court had chosen administrative review for zoning decisions involving special use permits, the legislature dictated that certain zoning decisions should instead be given a legislative type of review. *Millineum Maintenance Management*, 384 Ill. App. 3d at 652. The intent was to narrow the range of judicial inquiries into municipal zoning decisions. *Conaghan*, 2016 IL App (2d) 151034, ¶ 53.

¶ 23        Section 11-13-25 of the Municipal Code directs the court's review of a municipality's decision on a special use, variance, rezoning, or other amendment to a zoning ordinance, limiting a court's review to "*de novo* review as a legislative decision." 65 ILCS 5/11-13-25(a) (West 2022). The specified review allows the court to look beyond the administrative record, but limits review of "the (now) 'legislative' zoning decision" for constitutional violations. *Conaghan*, 2016 IL App (2d) 151034, ¶ 53. A trial *de novo*, without giving any deference to an administrative agency's decision, would be unconstitutional because it invites the judiciary to perform executive functions. *Millineum Maintenance Management*, 384 Ill. App. 3d at 652-53; see *Conaghan*, 2016 IL App (2d) 151034, ¶ 53 ("[C]onstitutional constraints on the zoning power are always appropriate for judicial consideration, but judicial review in other respects may be limited by the legislature.").

¶ 24        We agree with this interpretation of the statutory language, and we hold that section 11-13-25 of the Municipal Code directs the type of judicial review of the listed zoning decisions but does not shield those decisions from the constitutional requirements of due process. See 65 ILCS 5/11-13-25(b) (West 2022) ("The principles of substantive and procedural due

process apply at all stages of the decision-making and review of all zoning decisions."); see also *Millineum Maintenance Management*, 384 Ill. App. 3d at 654-55 (holding section 5-12012.1 of the Counties Code limits only the mode of direct judicial review over the listed zoning decisions, not the application of due process to any of those zoning decisions). This comports with principles of separation of powers, as the legislature lacks the power to "[usurp] the court's inherent power to interpret the law even if the court does not have the power to conduct direct judicial review." *Millineum Maintenance Management*, 384 Ill. App. 3d at 649.

¶ 25     Thus, as the proceedings before the City's zoning board regarding the preliminary PUD approval and rezoning concerned special use permits, they were essentially administrative in nature, and plaintiff was entitled to the amount of procedural due process that is required in proceedings when property rights are at stake. See *Passalino v. City of Zion*, 237 Ill. 2d 118, 124 (2010) (holding a plaintiff's entitlement to procedural due process arises when a property interest is affected); see also *Klaeren*, 202 Ill. 2d at 182 (holding the amount of procedural due process is dependent on nature of proceeding). The court below ruled in favor of plaintiff, concluding plaintiff proved by clear and convincing evidence that the City violated plaintiff's constitutional procedural due process rights. As the trial below was a stipulated bench trial and the trial court merely reviewed documentary evidence, we review that decision *de novo*. *Cleeton v. SIU Healthcare, Inc.*, 2023 IL 128651, ¶ 26; see *People v. Cardona*, 2013 IL 114076, ¶ 15 (holding that a procedural due process claim presents a legal question that is also subject to *de novo* review).

¶ 26                         B. Procedural Due Process

¶ 27     "It is a constitutional right that no State may deprive a person of life, liberty, or property without due process of law." *Balmoral Racing Club, Inc. v. Illinois Racing Board*, 151

- 11 -

Ill. 2d 367, 405 (1992); U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. The due process analysis starts with a determination of whether there is a protectable interest in life, liberty, or property at issue. *Balmoral Racing Club*, 151 Ill. 2d at 405. "[P]rocedural due process governs the methods by which the state may deprive an individual of a protected interest." *People ex rel. Klaeren v. Village of Lisle*, 316 Ill. App. 3d 770, 777 (2000), *aff'd*, 202 Ill. 2d 164 (2002). The process that is constitutionally required is a flexible concept, dependent on the demands of the particular situation. *Kopf v. Kelly*, 2024 IL 127464, ¶ 82. The basic tenets of due process are adequate notice of the proposed government action and a meaningful opportunity to be heard. *Cardona*, 2013 IL 114076, ¶ 15.

¶ 28        In evaluating a procedural due process claim, courts should consider and balance the familiar factors under *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) the private interest that will be affected; (2) the risk that the procedures used will result in an erroneous deprivation of the private interest and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including any additional burdens that additional or substitute procedural requirement would entail. *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 277 (2004) (citing *Mathews*, 424 U.S. at 335). A zoning ordinance is presumed to be valid, and a plaintiff bears the burden of overcoming this presumption by clear and convincing evidence. *La Salle National Bank of Chicago*, 12 Ill. 2d at 46 (1957). Within this context, we must evaluate the validity of the zoning ordinance in this case.

¶ 29                          1. *First* Mathews *Factor*

¶ 30        With respect to the first factor, there is no dispute that plaintiff has a private property interest that would be affected by the PUD and rezoning, making her an interested landowner entitled to due process. See *Klaeren*, 202 Ill. 2d at 188 (finding abutting landowners

to a proposed annexation, special use, and rezoning petition were interested parties entitled to due process). Although plaintiff's property was not rezoned pursuant to any of the ordinances, plaintiff's property directly abuts the PUD, and the evidence supports a finding that her use and enjoyment of her property will be greatly affected by the PUD.

¶ 31                                    2. *Second* Mathews *Factor*

¶ 32          The second *Mathews* factor requires an evaluation of the procedures used by the City, the risk that those procedures resulted in an erroneous deprivation of plaintiff's private interest, and the probable value of any additional procedural safeguards the City could have imposed. *Mathews*, 424 U.S. at 335. In this case, in accordance with city ordinances, the zoning board held a hearing for the purpose of making a recommendation to the city council on the application for a preliminary PUD plan. See Galena Municipal Code § 154.902(C)(3) (adopted April 11, 2005) (defining powers and duties of the zoning board of appeals). The PUD application requested annexation of additional properties into the city and the rezoning of all the properties from limited agriculture to a PUD, with an underlying district of planned commercial. The PUD application requested five exceptions from the planned commercial zoning district, all specifically allowed as special uses under the city's zoning ordinance, which were ultimately incorporated into the rezoned PUD district. The five exceptions were: (1) a 50,000 square foot building (exceeding the 25,000 square foot maximum); (2) a hotel/motel; (3) outdoor dining terraces exceeding 15% of interior areas; (4) terrace areas for outdoor entertainment; and (5) an outdoor pool. The PUD application alleged the development would conform to the goals of the City's comprehensive plan and would provide amenities in excess of those required for the underlying planned commercial district.

¶ 33        Pursuant to the Galena Municipal Code, the zoning board conducted a public hearing to consider the request for preliminary approval of the PUD and the attendant rezoning. At the public hearing, proponents and opponents of the project were allowed to speak and members of the zoning board asked questions about the details of the project. Plaintiff spoke in opposition to the project. Her time to speak was not limited, and she raised a number of concerns about the project, although she did not attempt to ask any specific questions of the Developer. When the Developer was then allowed to respond, it addressed some of the concerns raised by the opponents. For example, in response to plaintiff's concerns about increased traffic and its impact on emergency services, the Developer noted the fire chief, the police chief, and emergency medical services had been consulted regarding the plan. In response to plaintiff's concern about the impact of construction on water and sewer services, the Developer noted the facilities plan for water and sewer in the area had been updated and expanded since the comprehensive plan was last updated in 2003. Plaintiff had the opportunity to speak in rebuttal, acknowledging the Developer had consulted with emergency services but pointing out the Developer did not address how to address the impact of the increased traffic. Also, plaintiff acknowledged water and sewer services could be provided to the property, but those services would require increased infrastructure to be maintained by the City. At the close of the public hearing, the members of the zoning board proceeded to consider all the evidence and comments applicable to each individual element of the approval criteria for a zoning code amendment or a rezoning. The members of the zoning board were unable to make a positive recommendation of the project to the city council due to insufficient votes.

¶ 34        The matter was then brought to the city council for final action, without any recommendation from the zoning board. Plaintiff again had an opportunity to speak in opposition

- 14 -

to the proposal. The members of the city council confirmed they had each reviewed the record from the zoning board's public hearing, and each council member addressed the evidence applicable to each rezoning element (see Galena Code of Ordinances § 154.920(C) (adopted April 11, 2005)). Then, each council member addressed the community benefit elements required to approve a PUD (see *id.* § 154.923(a)). Ultimately, the city council approved the request for preliminary approval and rezoning to a PUD. See *id.* § 154.920(D) ("the City Council shall take final action" on decisions proposing zoning code amendments and rezoning); *id.* § 154.923(C)(3) ("[T]he City Council shall approve, conditionally approve, or deny all applications for a preliminary development plan and, at its discretion, the accompanying PUD/TND rezoning ordinance.").

¶ 35 The same procedures were followed before the zoning board and the city council in consideration of the Developer's proposed amendment to the preliminary PUD plan and request to annex additional property into the City and the PUD. Plaintiff again had the opportunity to speak at the zoning board hearing, initially and in rebuttal, and she also spoke in opposition to the project at the city council meeting. Again, the city council voted to approve the amendments to the PUD and the City's zoning map.

¶ 36 Relying on *Klaeren*, plaintiff argues, and the trial court found, the above procedure deprived her of procedural due process because she was not offered the opportunity to cross-examine the proponents of the project during the zoning board's public hearings. The trial court found *Klaeren* was determinative because, although the PUD application was not a *per se* special use request, it concerned special use requests. Thus, the failure to allow plaintiff to cross-examine adverse witnesses was a denial of procedural due process. As concluded above, we agree the precedent of *Klaeren* with respect to a plaintiff's right to due process in zoning matters

- 15 -

was not overruled by the subsequent legislation. However, we disagree with the trial court's rather mechanical application of *Klaeren* and instead evaluate the actual process received by plaintiff in light of the risk that the procedures used resulted in an erroneous deprivation of plaintiff's private interest and the probable value cross-examination would have provided. See *Kopf*, 2024 IL 127464, ¶ 82 ("[N]ot all situations calling for procedural safeguards call for the same kind of procedure." (internal quotation marks omitted)).

¶ 37        Based on the process afforded in this case, we conclude there was little risk the procedures used would result in an erroneous deprivation of plaintiff's private property interest. Plaintiff had an unlimited opportunity to pose questions regarding, among other things, the sufficiency of fire and emergency response services, and those concerns were addressed by the Developer. This court acknowledges there is value in direct questioning of the Developer but finds there is little probable value of such additional questioning in this case. See Black's Law Dictionary (12th ed. 2024) (stating, in the definition of "cross-examination," that "[t]he purpose of cross-examination is to discredit a witness before the factfinder in any of several ways, as by bringing out contradictions and improbabilities in earlier testimony, by suggesting doubts to the witness, and by trapping the witness into admissions that weaken the testimony").

¶ 38        In evaluating the procedures used by the City and the risk of an erroneous deprivation of plaintiff's private property interest, we also consider plaintiff's failure to request the opportunity to cross-examine any witnesses at any of the various hearings important. See *Lapp v. Village of Winnetka*, 359 Ill. App. 3d 152, 165 (2005) (finding fairness standard of procedural due process was met where, *inter alia*, the record did not indicate the plaintiffs requested cross-examination on a report addendum or that such a request would have been futile). As the trial court acknowledged, plaintiff never attempted to ask questions or requested to

be permitted to cross-examine any witnesses at the public hearings, and the City never denied such a request. The public hearing instructions from the zoning board's chairperson in this case were general instructions and were not of an unequivocal nature. *Cf. Klaeren*, 202 Ill. 2d at 178-79 (finding unequivocal, specific directions for the proceeding made an objection futile). We find plaintiff's assertion that an objection would have been futile is not supported by the record. Unlike the process in *Klaeren*¸ where the parties' comments were limited to two minutes and the public was advised " 'there [would] be no attempt at [the] hearing to answer any question raised by the audience [members]' and that [the board] would not consider any procedural objections raised by the public," those restrictions were not present in this case. *Id.* As noted above, plaintiff had an unrestricted amount of time to state her objections to the project and suggest doubts regarding the presentation by the Developer. Notably, plaintiff never indicated what further information she was prevented from presenting to the zoning board and the City by the procedures used. See *Erickson v. Knox County Wind Farm LLC*, 2024 IL App (4th) 230726, ¶ 93 (concluding a hearing officer's refusal to continue the hearing for plaintiffs to provide additional witnesses did not deprive plaintiffs of procedural due process when plaintiffs were given the chance to present witnesses and did not demonstrate how the absence of the additional testimony denied them due process).

¶ 39                              3. *Third* Mathews *Factor*

¶ 40          The last *Mathews* factor is the City's interest and the impact of any additional procedural requirements. *Mathews*, 424 U.S. at 335. As noted in its ordinances, the City has determined that PUDs are advantageous to the City under certain circumstances. Galena Municipal Code § 154.923(A) (adopted Apr. 11, 2005). A PUD zoning district specifically "applies to mixed-use and unique single-use projects" and should be used "only when long-term

- 17 -

community benefits *** will be derived." *Id.* § 154.301(A). PUD zoning requires the city council to consider specific benefits to the city that would support the PUD zoning, such as more efficient infrastructure, a greater quality and quantity of public and/or private open space, and innovative designs. *Id.* When approving the PUD, the city council "shall determine the allowed uses" and "list uses that are authorized by right or by special use permit." *Id.* § 154.301(C)(1), (2). Thus, the City's approval of the preliminary PUD application, which included the special use requests as of right, considered and balanced the special uses against other factors in the ordinance.

¶ 41　　　　It is the role of the zoning board to hear and recommend to the city council requests for approval of PUDs and rezoning, but the city council is tasked with making the final decision. *Id.* §§ 154.901, 154.902(C). Following the proscribed process, the city council determined—based on all the evidence presented to the zoning board, the comments made directly to the city council, and the criteria detailed in the applicable ordinances—that the PUD would result in long-term community benefits and rezoning was consistent with the code and zoning map. See *id.* §§ 154.920(A), 154.923(A). The process was thorough and allowed an interchange of evidence and opinions regarding the project. The City has an interest in an efficient process. See *Piasa Armory, LLC v. Raoul*, 2025 IL 130539, ¶ 25 (finding the state has an interest in resolving disputes in an efficient and less costly manner). Proactively offering cross-examination of the Developer, without a request by plaintiff, would impose an additional burden for little benefit under the specific facts of this case.

¶ 42　　　　　　　　4. *Balancing the* Mathews *Factors*

¶ 43　　　　After balancing the above *Mathews* factors, we conclude the City " 'met the fundamental requirements of due process—the opportunity to be heard at a meaningful time and

- 18 -

in a meaningful manner.' " *Piasa Armory, LLC*, 2025 IL 130539, ¶ 15 (quoting *In re Robert S.*, 213 Ill. 2d 30, 49 (2004)). In this case, the record indicates plaintiff had a full "opportunity to test, explain, or refute" the evidence presented by the proponents. But *cf. Balmoral Racing Club*, 151 Ill. 2d at 410 (holding there was no hearing for due process purposes when a party did not know the evidence presented against its interest, so it was not given an opportunity to test, explain, or refute the evidence). Based on the above analysis, we conclude plaintiff failed to meet her burden of proving a violation of procedural due process by clear and convincing evidence.

¶ 44                                    C. Forfeiture

¶ 45        The City also argues plaintiff waived or forfeited her claim that she was entitled to cross-examine the Developer at the hearings by failing to object. We note the City used the terms forfeiture and waiver interchangeably in its brief. However, there is a distinction. While the *Klaeren* court used the term "waiver" in its analysis of the plaintiff's failure to object to the lack of cross-examination at the hearing, when a plaintiff fails to act, it is more accurately termed a "forfeiture." See *Davis v. Yenchko*, 2024 IL 129751, ¶ 14 n.2. As noted in our evaluation of the process afforded in this case, plaintiff never attempted to ask questions of the Developer and never requested to cross-examine any witnesses. Assuming, *arguendo*, a formal procedure was required that included cross-examination, it follows that a formal objection would have been required to preserve the error. See *Klaeren*, 202 Ill. 2d at 178 ("[F]ormal objections go hand in hand with formal proceedings."). Plaintiff asserts no objection was required because such an act would have been futile. But, as we concluded above, plaintiff's assertion that an objection would have been futile is not supported by the record. Accordingly, although we determined that plaintiff's procedural due process rights were not violated in this case when she was not afforded the opportunity to cross-examine the Developer, assuming, *arguendo*, cross-examination was

required to satisfy procedural due process, we conclude plaintiff forfeited the issue by failing to object at the hearing.

¶ 46                                    III. CONCLUSION

¶ 47            For the reasons stated, we reverse the trial court's judgment in favor of plaintiff on count VIII and reverse the order declaring void the approval of the preliminary PUD application, the amendment to the preliminary PUD plan, and the related rezoning ordinances. The ordinances amending the City's zoning map (City of Galena Ordinance Nos. O.22.11 (approved May 23, 2022) and City of Galena Ordinance No. O.22.28 (approved Nov. 29, 2022)) are hereby reinstated.

¶ 48            Reversed.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Jo Daviess County, No. 2022-MR-0003; the Hon. John D. Hay, Judge, presiding. |
| **Attorneys for Appellant:** | David Feller Hyde, of Law Office of David Hyde, Ltd., of Chicago, for appellants True North Quality Homes, LLC, and Bien Vie, LLC.<br><br>No brief filed for other appellant. |
| **Attorneys for Appellee:** | Erik E. Carlson and Darron M. Burke, of Barrick Switzer Long Balsley & Van Evera, LLP, of Rockford, for appellee. |