JAMES B. HEWETTE, Plaintiff-Appellant, v. CARBONDALE ZONING BOARD OF APPEALS, Defendant-Appellee.

Fifth District    No. 5—93—0255

Opinion filed May 27, 1994.

Gregory A. Veach and Patricia A. Hoke, both of Barrett, Twomey, Morris, Broom & Hughes, of Carbondale, for appellant.

Michael L. Wepsiec, City Attorney, of Carbondale, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

This is an appeal from an order which affirmed a decision of the Carbondale Zoning Board of Appeals and denied James Hewette a zoning variance. We affirm.

James Hewette owns a two-story frame building containing his residence and eight rental apartments. The use of the structure as an apartment conforms to the zoning district in which it is located, R-3, high-density residential. The dispute in this case involves the application of certain sections of the Carbondale zoning ordinances dealing with side-yard-setback requirements. Section 15—2—30(J) requires the support posts or exterior walls of structures in R-3 areas to be set back at least 10 feet from any property line. (Carbondale, Ill., Revised Code § 15—2—30(J) (1990).) Section 15—2—17(B)(14) permits certain projections, including roof eaves, to extend into the

required setback. (Carbondale, Ill., Revised Code § 15—2—17(B)(14) (1990).) Section 15—2—17.B.14 permits a four-foot projection of the south side of a building or structure if a minimum of five feet six inches remains between the farthest extremity of that projection and the property line.

Prior to enactment of the current minimum-setback regulations, the post supporting the southeast corner of Hewette's building was located three feet three inches from the south property line. The building and the original porch do not meet the current setback requirement of 10 feet, but they do not violate the zoning ordinance because they are classified as nonconforming structures per section 15—2—78 of the Carbondale zoning ordinances. (Carbondale, Ill., Revised Code § 15—2—78 (1990).) Section 15—2—78 permits remodeling or an addition to a nonconforming structure, provided such remodeling or addition will not create a violation of the zoning regulations. Carbondale, Ill., Revised Code § 15—2—78(B) (1990).

In 1989, Hewette applied for a zoning certificate and building permit to construct a new porch on his property. The proposed porch was to have a supporting post three feet three inches from the existing property line. The eaves of the proposed porch were three feet from the property line. Hewette was informed by members of the Carbondale Zoning Board (the Board) that he needed to modify his plans in order to meet the setback requirements or, in the alternative, seek a variance. No further action was taken until October 23, 1991, when Linda Gladson, a planner with the City of Carbondale, noticed that the porch which Hewette had proposed in 1989 was under construction. Gladson noted that the support posts had been installed and were within the 10-foot minimum-setback area. On October 24, 1991, Hewette submitted his application for a variance. On October 28, 1991, Carbondale building inspector Steve Larson discussed the project with Hewette and advised him to obtain

a building permit and zoning certificate for the portions of the porch not in violation of the setback requirements. On October 30, 1991, Larson issued a stop-work order because construction had continued in spite of the absence of a building permit and zoning certificate. Later that day Hewette obtained a zoning certificate and building permit to continue construction on the lawful portions of the porch. Between October 30, 1991, and November 4, 1991, the porch was completed with encroachment on the minimum setback.

In November of 1991, the Board met to consider Hewette's request for a variance from the minimum-setback requirements. At that hearing Hewette testified that his purpose in constructing the porch and eaves was to shelter the apartment complex from the weather. He and his wife are elderly, and it would be easier for them to maintain the premises if the sidewalk were covered with eaves which would keep the porch free of snow and sleet. Hewette testified that if he had to conform with the zoning ordinance he could not accomplish that purpose. He further testified that if he could not extend the porch and the eaves so that they meet the existing porch and eaves it would interfere with the overall aesthetic characteristics of the building.

Linda Gladson, a city planner, pointed out to the Board that Hewette could have projected the eaves of his porch to within five feet six inches of the south property line and been in conformance with the zoning ordinances. After considering the evidence presented, the Board denied Hewette a variance of setback requirements and found that no special circumstances or conditions existed which were peculiar to this property and which were not applicable to other property in the same zoning district. The circuit court affirmed the Board's decision.

Hewette first argues on appeal that the trial court's decision was against the manifest weight of the evidence. When considering

whether the trial court erred in an administrative review action, we will overturn the determination of the trial court if it is against the manifest weight of the evidence. *Rosehill Cemetery Co. v. City of Chicago* (1983), 114 Ill. App. 3d 277, 283, 448 N.E.2d 930, 934.

Section 15—2—102(B)(1)(a) of the Carbondale zoning ordinances lists four factors which applicants for variances must demonstrate:

"1. A variance may be granted by the Zoning Board of Appeals after a public hearing upon the following conditions:

a. That the party seeking a variance makes written application to the Board demonstrating:

(1) That special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other lands, structures, or buildings in the same district;

(2) That literal interpretation of the provisions of this Article would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this Article.

(3) That the special conditions and circumstances do not result from the actions of the applicant.

(4) That granting the variance requested will not confer on the applicant any special privilege that is denied by this Article to other lands, structures, or buildings in the same district." (Carbondale, Ill., Revised Code § 15—2—102(B)(1)(a) (1990).)

Moreover, section 15—2—102(B)(1)(b) provides:

"[The applicant must demonstrate t]hat the granting of the variance will be in harmony with the general purpose and intent of this Article and will not be injurious to the neighborhood, or detrimental to the public welfare. A variance shall not be granted merely to serve as a convenience to the applicant, but only if it is necessary, to alleviate some demonstrable hardship or difficulty. Under no circumstances shall the Board grant a variance to allow a use not expressly permissible under the terms of this Article in the district involved." Carbondale, Ill., Revised Code § 15—2—102(B)(1)(b) (1990).

■ At the hearing before the Board, city planner Gladson testified that in her opinion there are no special circumstances peculiar to Hewette's property to justify the variance. She stated that the setback requirements would not deprive plaintiff of his desire to build a porch which would accomplish plaintiff's stated purposes. Gladson testified that the front door to the apartment building is protected from the weather by the original porch roof and that construction of the new porch within setback requirements would provide an additional 10 feet of protection to the front door. She also testified that nonconformity of Hewette's property may well have been the plaintiff's doing

because the building in question was partially destroyed by fire in the early 1970's. Gladson opined that Hewette rebuilt the building on the original foundation and could have designed it at that time with the purpose of protecting the doorways from the weather.

According to Hewette, the new porch would relieve him of the burden of clearing his walk of snow and ice. The Board's decision affirms the Board's belief that such impediments are a mere inconvenience and not a hardship. Furthermore, the snow, sleet, and ice are not conditions unique to the plaintiff, as such precipitation affects all residents of the City of Carbondale.

Another hardship asserted by Hewette on appeal is that constructing the porch in compliance with the setback provision would require the porch roof to be connected to the existing overhang from the second story of the building. This, according to Hewette, would result in the porch roof not properly tying into the existing structure at the corner and would jeopardize the structural viability of the porch roof. The jeopardy would be the result of undue stress on the building wall at a place not engineered to carry the weight and stress of the porch roof. Only Hewette testified before the Board as to the possibility of undue stress on the porch or building. There is no evidence that Hewette is a structural engineer, architect, or other expert in porch design and construction. No expert testimony was presented on this issue, and the Board need not have accepted Hewette's assertion of hardship.

The Board found that there are no special conditions or circumstances peculiar to the building, and that Hewette would not be deprived of rights enjoyed by other property owners if the variance was denied. The trial court concluded that the finding of the Board was not against the manifest weight of the evidence. We agree.

Hewette next argues on appeal that the four factors enumerated in zoning ordinance section 15—2—102(B)(1)(a) are vague and contradictory. Section 15—2—102(B)(1)(a) was previously set forth in its entirety. We briefly summarize the four factors here:

(1) That there are special conditions or circumstances which are peculiar to the applicant's property.

(2) That a literal interpretation of the zoning ordinance would deprive the applicant of rights enjoyed by others in the zoning district.

(3) That the special conditions and circumstances were not the result of the applicant's actions.

(4) That granting a variance to the applicant will not confer to him any special privilege that is denied to others in the zoning district.

Hewette contends that the initial requirement of section 15—2—102(B)(1)(a), that there be some special condition or circumstances on the property, contradicts paragraphs 2 and 4, which require that the applicant not be deprived of any right enjoyed by other properties in the district and that the applicant not be conferred any special privilege not enjoyed by others. Hewette argues that any grant of a variance will necessarily require that the applicant be treated differently from other property owners in the same district. Hewette maintains that the contradictory criteria provide the Board with no rational or objectively determinable guide for determining whether to grant a variance. Plaintiff includes excerpts from the Board's hearing in his brief to illustrate the difficulty Hewette perceives the Board had in determining whether special conditions existed.

A zoning ordinance is presumptively valid, and the burden is on the party challenging its validity to prove that it is unconstitutional. (*People v. Gurell* (1983), 98 Ill. 2d 194, 204-05, 456 N.E.2d 18, 22.) To succeed on a claim that a law or regulation is, on its face, unduly vague in violation of due process, the complainant must demonstrate that the law or regulation is impermissibly vague in all of its applications. (*Granite City Division of National Steel Co. v. Pollution Control Board* (1991), 221 Ill. App. 3d 68, 74, 581 N.E.2d 703, 707, *aff'd* (1993), 155 Ill. 2d 149, 613 N.E.2d 719.) A zoning ordinance will be upheld as a proper exercise of the police power if it bears any substantial relationship to the health, safety, comfort, or welfare of the public. (*City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 115, 398 N.E.2d 829, 831.) A statute or ordinance is not unconstitutionally vague when a person of ordinary intelligence can readily ascertain its meaning. *People v. Gurell* (1983), 98 Ill. 2d 194, 207, 456 N.E.2d 18, 23.

■ Hewette's vagueness challenge focuses on his theory that the members of the Board could not even agree on whether special circumstances existed in this case. The record shows that the Board members did disagree as to whether the physical layout of the building, or whether the fact that at one time the property was split into three parcels, constituted a special circumstance. It seems, if anything, the four factors of section 15—2—102(B)(1)(a) provide the applicant with a window of opportunity to demonstrate to the Board as many theories as he can to justify the granting of a variance. The language of the ordinance is not vague merely because it potentially encompasses many situations. As we are condemned to the use of words, we can never expect mathematical certainty from our language. (*People v. Fabing* (1991), 143 Ill. 2d 48, 53, 570 N.E.2d 329, 332.) Given the myriad of situations where a variance might be

sought and the unlimited special circumstances or conditions that might exist, we cannot find that the ordinance is unduly vague and beyond reason when measured by common understanding and practices.

Plaintiff fails to point out section 15—2—102(B)(1)(b), which serves as a guide in determining whether a variance is warranted. That ordinance provides:

> "That the granting of the variance will be in harmony with the general purpose and intent of this Article and will not be injurious to the neighborhood, or detrimental to the public welfare. A variance shall not be granted merely to serve as a convenience to the applicant, but only if it is necessary, to alleviate some demonstrable hardship or difficulty. Under no circumstances shall the Board grant a variance to allow a use not expressly permissible under the terms of this Article in the district involved." (Carbondale, Ill., Revised Code § 15—2—102(B)(1)(b) (1990).)

An impossible standard of preciseness of language and expression is not required; it is enough that the law's language and meaning are sufficiently definite when measured by common understanding and practices. (*People v. Capitol News, Inc.* (1990), 137 Ill. 2d 162, 171, 560 N.E.2d 303, 307.) Hewette has not shown how section 15—2—102(B), when read as a whole, fails to serve as a sufficient guide to ascertaining whether a variance may be granted. We conclude that Hewette has not met his burden of proving that section 15—2—102 is unconstitutional.

Finally, Hewette argues that the trial court erred in not finding the zoning ordinance unreasonable as applied to his property.

If a zoning ordinance is applied to a particular parcel of land in an arbitrary, unreasonable, or capricious manner, and the application bears no substantial relationship to the public welfare, then that application is an improper restriction on the ownership of property. (*Bennett v. City of Chicago* (1962), 24 Ill. 2d 270, 273-74, 181 N.E.2d 96, 98; *Safanda v. Zoning Board of Appeals* (1990), 203 Ill. App. 3d 687, 561 N.E.2d 412.) Each case must be decided on its own particular facts, taking into consideration the use and zoning of nearby property, the character of the neighborhood, the extent property values are diminished, and the relative gain to the public as compared with the hardship imposed upon the owner. If the gain to the public from the application of the ordinance to a particular property is small when compared to the hardship imposed upon the property owner, there is no valid basis for application of the restriction to the subject property. *Marquette National Bank v. County of Cook* (1962), 24 Ill. 2d 497, 502, 182 N.E.2d 147, 150.

■ Setback requirements are generally designed to prevent the overcrowding of land, to promote safety from fire and other dangers, and to secure adequate light, air, and sunshine. (*Baker v. County of Peoria* (1983), 116 Ill. App. 3d 518, 520, 452 N.E.2d 129, 131.) In this case, plaintiff's building is a legally nonconforming use. To permit the variance would result in the expansion of a nonconformity. Section 15—2—75 of the Carbondale zoning ordinances provides:

> "It is the intent hereof to provide for the elimination of certain nonconformities, to permit some nonconformities to conditionally continue, and to insure that nonconformities shall not be horizontally or vertically enlarged, increased, expanded or extended, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district." (Carbondale, Ill., Revised Code § 15—2—75 (1990).)

By granting the variance and allowing the extension of the porch onto the minimum setback, the Board would allow an existing nonconformity to be expanded. Hewette argues that the variance would keep much of the snow and ice from falling on the sidewalks used by the tenants. He also contends that the proposed design of the porch extension, as opposed to the extension currently permitted under the ordinances, would not put undue weight on the existing structure and would provide the most aesthetically pleasing appearance. The city planner testified before the Board that, as it currently exists, the door leading into the apartment complex is protected from the elements. The Board viewed a videotape of the existing structure and was able to visualize for itself whether the proposed extension was necessary to eliminate the elements of precipitation or would simply serve as a convenience to the owner. As noted previously, no evidence was presented as to the engineering aspects of the proposed structure. As for aesthetics, while the proposed porch extension would not align with the existing structure, aesthetics was but one factor for the Board to consider.

It is the plaintiff's burden to establish by clear and convincing evidence that the legislative decision, as contained within the zoning ordinance, as to the plaintiff's property is clearly unreasonable. (*Coney v. County of Du Page* (1977), 51 Ill. App. 3d 980, 983, 367 N.E.2d 152, 153.) Hewette has failed to show by clear and convincing evidence that the denial of the variance was unreasonable.

For the reasons set forth, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

LEWIS, P.J., and WELCH, J., concur.