FOURTH DIVISION

                                               July 29, 2005 

No. 1-04-1920

ROBERT E. LAPP, JO ANNE LAPP,      )         Appeal from 

DANIEL V. KINSELLA, RUTH ANNE      )      the Circuit Court

KINSELLA, THOMAS HULIK, DEBORAH    )        of Cook County. 

HULIK, JOHN SOBEL, DEBORAH SOBEL,  ) 

EDWARD MARUT, JOANNE MARUT, JOHN   ) 

SMITH, ELIZABETH HOLMES, JOHN      )        

DURBIN, CECE DURBIN, SILAS KEEHN,  )

MARCIA KEEHN, WILLIAM SMITH, TRUDE )           

SMITH, NANCY McCARTHY and ELIZABETH)                     

GUTEKANST,                         )                    
  

                                   ) Plaintiffs-Appellants,        )

     ) 

                          ) 

v.     ) 

     )             

     ) 

                              ) 

VILLAGE OF WINNETKA, an Illinois   )

municipal corporation, and the     )

WINNETKA HISTORICAL SOCIETY, an    )

Illinois not-for-profit            )

corporation,                       )      Honorable 

                                   )      Richard J. Billik,

Defendants-Appellees.        )   Judge Presiding.             

                  

      

JUSTICE QUINN delivered the opinion of the court:

Plaintiffs filed a complaint challenging an ordinance  passed by the Village of Winnetka (Village), which granted the Winnetka Historical Society (Historical Society) a special use permit and a zoning variation to use a single-family residence and its accessory garage as the permanent home for the Historical Society's offices, archives, historical artifacts and museum exhibit space.  The zoning variation permitted the Society to extend the existing one-car garage by about 10 feet so that it could be connected to the residence to provide climate-controlled storage.  Plaintiffs' complaint also alleged that a second ordinance, which amended the Winnetka zoning ordinance by adding a definition for the term "nonessential public use," created an amendment that was unconstitutionally vague.

On cross-motions for summary judgment, the circuit court of Cook County entered an order dismissing count II of plaintiffs' complaint, which alleged that the amendment to the Village's zoning ordinance was unconstitutionally vague.  The circuit court subsequently entered an order and memorandum opinion, granting the Villages' and Historical Society's motions for summary judgment, denying plaintiffs' cross-motions, and entering judgment for defendants, the Village and Historical Society, on all counts.  Plaintiffs now appeal both orders.  For the following reasons, we affirm.

I.  BACKGROUND  

The property at issue in this case is located at 411 Linden Avenue in Winnetka, Illinois (411 Linden).  The property is 100 feet wide and about 112.59 feet deep and is improved with a single-family structure that is designated a historical landmark.  It is located on one of the major streets in the Village, approximately two blocks south of the Village hall and the Village's downtown commercial area and near off-street parking.  The home was built around 1859 and is one of the oldest homes in the Village and was owned by one of the Village's founding families.  The home at 411 Linden is also one of the last remaining examples of Gothic Revival Architecture in the Village.  The Historical Society plans to preserve and restore the original architectural features at the home.  The property includes a detached, one-car garage that was built in 1997 and is approximately 220 square feet.

Prior to 1987, the Historical Society occupied space at the Winnetka public library.  After vacating the library, it occupied space at the Skokie School in Winnetka.  Under an arrangement, the Historical Society, with the assistance of the Village, leased space at the Skokie School.  The Historical Society was required to vacate the leased space at the Skokie School in 2000.  Since it moved from the school, the Historical Society has been without a permanent location.  The Village's comprehensive plan, refers to the Historical Society's efforts to secure a "home," and the Village has, in the past, appropriated funds for the Historical Society's operations.

In spring 2001, the Historical Society purchased the 411 Linden property.  Following the closing on the sale in June 2001, the Historical Society's real estate agent, Jane Brower, who is the wife of a Village trustee, received a $12,143.75 commission from the sale proceeds on or about July 2, 2001 from Coldwell Banker Brokerage North.  Shortly thereafter, Jane Brower donated $7,000 of the commission to the Historical Society, which she estimated to represent the after-tax portion of any profit she might have received for her services as a real estate broker.

Soon after the Historical Society purchased the 411 Linden property, it decided to expand the garage to a two-car garage for functional reasons.  The Historical Society planned to store part of its collection of historical artifacts and files in the garage because it claims there was insufficient storage area in the home and local fire code and load restrictions precluded the storage of all such materials in the home.       

 The Winnetka zoning ordinance requires buildings and structures to be set back specified distances from rear-yard lot lines.  Based upon a recommendation from its architect, the Historical Society sought to attach the garage to the residence, which would become part of the home and then make it subject to a 16.92-foot rear-yard setback.  According to the Historical Society, it needed to apply for a zoning variation because the garage, when expanded and attached to the home, would then be considered to be about six feet from the rear-yard line.

In May 2001, the Historical Society applied for a setback variation and also for a special use permit as a "nonessential public use" to use the 411 Linden property as its office and for its museum operations.  The Historical Society is a private, not-for-profit corporation that was founded in 1932, according to the Village's comprehensive plan.  The Historical Society's mission statement reads that it was established to collect, preserve and present artifacts and memorabilia representing and depicting Winnetka history and to provide services for the purpose of increasing and enriching public knowledge about Winnetka.

The Historical Society's application was considered over several months by the zoning bodies, including the Village council.  On May 17, 2001, the design review board considered the Historical Society's conceptual design for the exterior appearance of the house and the property at 411 Linden.  At the conclusion of the meeting, the design review board passed a motion of positive comment on the Historical Society's plans.  On June 13, 2001, the Winnetka plan commission met to determine whether the Historical Society's proposed use is consistent with the Winnetka comprehensive plan.  At this meeting, several of the plaintiffs voiced their opposition to the proposed use.  At the conclusion of the meeting, the plan commission determined that the Historical Society's proposed use is consistent with the comprehensive plan and unanimously recommended approval of the Historical Society's application to the Village Council.

The Winnetka Zoning Board of Appeals (ZBA) conducted a public hearing that included meetings on June 11 and 28, 2001, on the Historical Society's application and the applicability of the Village's zoning ordinance that governs special use permits.  The hearings included testimony and other evidence presented by the Historical Society, by objectors to the Society's application and by other interested persons.

At the conclusion of the June 11, 2001, hearing, the ZBA scheduled another meeting for June 28, 2001, to continue the public hearing to consider additional evidentiary submissions, including from the Society's real estate appraiser and from the plaintiffs' real estate appraiser.  On June 19, 2001, the ZBA received the additional evidentiary submissions.  At the conclusion of the continuation hearing on June 28, the ZBA voted to recommend to the Village council both the variation and special use permit requested in the Historical Society's application.

All recommendations, findings, and all recorded material used by the three advisory bodies were forwarded to the Village council.  Pursuant to Zoning Ordinance §17.56.010(G) (Village of Winnetka Zoning Ordinance § 17.56.0101 (G) (2001), the council has the exclusive authority to approve, deny or modify special use permits in the Village or may return the matter to the ZBA for further consideration and findings. Under Zoning Ordinance § 17.60.010(E), regarding variations, in situations involving the reduction of a setback of more than 20%, the ZBA shall act only in an advisory capacity to the Village council, whose decision in the granting or denial of the variation request shall be final.

The Village council first considered the Historical Society's application at a meeting on July 17, 2001, and also entertained the matter at a meeting on August 7, 2001.  On July 16, 2001, the day before the Village council's first meeting, the Historical Society's appraiser submitted a two-page addendum to his report dated June 19, 2001, that included a reference to the recent sale of the property at 410 Linden, which is located directly across the street from the Historical Society's property.

At the next meeting in August 2001, in response to comments made by one or more of the plaintiffs, the Village council tabled the Historical Society's application until October 16, 2001, to investigate the feasibility of alternative sites and the potential to relocate the home at 411 Linden.

The Village asserted that prior to its next meeting, it arranged for a review of alternative sites for the Historical Society.  On September 18, 2001, the Village presented a review of possible alternative sites at a public meeting.  On October 2, 2001, the Village council met at a public session to consider the alternative sites and concluded that the alternative sites were not viable.  The Village council then decided to place the Historical Society's application on the agenda for consideration at a public study session.  At that meeting on October 9, 2001, the Village council reviewed the Historical Society's application and submissions to the ZBA in support of its application.  It was the consensus of the Village council that the Historical Society met all the standards that govern the grant of a special use permit, subject to certain possible restrictions and conditions.

On October 16, 2001, the Village council held a meeting for the purpose of considering possible restrictions and conditions on the Historical Society's application and proposed use.  The Village council invited public comment and at least one plaintiff addressed the Council.   

On November 20, 2001, the Village Council by a unanimous vote enacted Ordinance M-28-2001 (Winnetka Municipal Ordinance M-28-2001 (eff. Nov. 20, 2001)), granting the Historical Society's application for a setback variation and for a special use permit, based upon the ZBA's recommendation, but with certain restrictions and conditions on the use, including lighting, signs, any addition to the structure that increases the gross floor area, hours of operation, events and parking.  In addition, the ordinance required the designation of a person to be the Historical Society's liaison with neighboring residents and requires the furnishing to neighboring residents a monthly calendar of events and for a review of the use of the property after a certain period of time for compliance.  Moreover, the ordinance granting the special use was limited to the Historical Society only and did not apply to any other user of the property.

According to the parties, the Historical Society was the first applicant to apply for a special use permit as a "nonessential public use" since that term was added to the Zoning Ordinance in 1997.  The Historical Society maintained that according to the legislative history of the Village's Zoning Ordinance, "nonessential public uses" were not limited to publicly owned property.  On November 20, 2001, the Village Council took official action to define "nonessential public uses" in the Zoning Ordinance.  The Village council first considered amending the Zoning Ordinance to define nonessential public use at a study session on October 9, 2001.  At a public meeting on October 16, 2001, the council discussed the draft language of such an amendment.  On November 6, 2001, the Village council held a public hearing on the amendment to the Zoning Ordinance.  At that meeting, one of the plaintiffs indicated that the proposed amendment opens the door for institutional uses to encroach into residential neighborhoods.  On November 20, 2001, prior to enacting Ordinance M-28-2001, the Council approved Ordinance MC-10-2001, which defines a "nonessential public use" as a "use affected with the public interest, regardless of ownership."  Village of Winnetka Municipal Code MC-10-2001 (eff. Nov. 20, 2001).

 On April 24, 2002, plaintiffs filed a complaint challenging the Village council's approval of Ordinances M-28-2001 and MC-10-2001.  Plaintiffs' third amended complaint challenged the council's grant of the special use permit on procedural and substantive grounds; challenged the council's amendment pursuant to Ordinance MC-10-2001 as unconstitutionally vague; and challenged the Council's grant of a rear setback variance.

On February 28, 2003, the trial court entered an order dismissing plaintiffs' claim that the amendment pursuant to Ordinance MC-10-2001 was unconstitutionally vague.  On May 28, 2003, the trial court entered an order and issued a 28-page memorandum opinion granting defendants' motions for summary judgment on plaintiffs' remaining claims.

On appeal, plaintiffs contend that (1) the Village council's approval of the Historical Society's special use permit and zoning variation was procedurally defective; (2) the council's approval of the Society's special use permit was unsupported by the evidence; (3) the council's approval of both ordinances was infected by a conflict of interest on the part of a Village trustee; (4) the council's approval of the Society's zoning variation was unsupported by the evidence; and (5) the council's amendment to the Zoning Ordinance is unconstitutionally vague.  

II.  ANALYSIS

A.  Alleged Defects in the Village Council's Proceedings

Plaintiffs first contend that the Village council's approval of the Historical Society's special use permit and zoning variation was procedurally defective. 

Our review of the trial court's grant of summary judgment is 
de
 
novo
.  
Makowski v. City of Naperville
, 249 Ill. App. 3d 110, 115 (1993).  Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 
735 ILCS 5/2- 1005(c)
 (West 2002); 
Natale v. Gottlieb Memorial Hospital
, 314 Ill. App. 3d 885, 888 (2000)
.  
The function of a reviewing court on appeal from a grant of summary judgment is limited to determining whether the trial court correctly concluded that no genuine issue of material fact was raised and, if none was raised, whether judgment as a matter of law was correctly entered.  
Makowski
, 249 Ill. App. 3d at 115. 

Plaintiffs argue that the trial court's grant of summary judgment should be reversed based on procedural errors where the Village council should not have conducted a hearing on the Historical Society's application; where plaintiffs did not have an opportunity to cross-examine witnesses at the Village Council hearing; and
 where the Village council should have referred the matter to the ZBA after the qualifications for a special use permit were amended by enactment of Ordinance MC-10-2001.

Plaintiffs first argue that the Village council had no authority under the Illinois Municipal Code (65 ILCS 5/1-1-1 
et
 
seq
. (West 2002)), or under its own ordinances to conduct a hearing regarding the special use request and that plaintiffs did not have the opportunity to cross-examine witnesses.  The Illinois Municipal Code authorizes corporate authorities of any municipality to approve or reject a special use application "after a public hearing before some commission or committee designated by the corporate authorities."  65 ILCS 5/11-13-1.1 (West 2002).   

Section 17.56.010(D) of the Winnetka Zoning Ordinance provides that "[a]ny application for special use permit shall be filed with the Secretary of the Board of Appeals" and that "the application shall be placed on the agenda for public hearing at the first regularly scheduled meeting of the Board of Appeals following its receipt by the Secretary."  Village of Winnetka Zoning Ordinance § 17.56.010 (D) (2001). Section 17.56.010(F) provides "within 30 days following the date of public hearing, the Board of Appeals shall forward a written copy of its findings of fact, together with its recommendation to the Village Council."  Village of Winnetka Zoning Ordinance § 17.56.010 (F) (2001) Section 17.56.010(G) of the Winnetka Zoning Ordinance provides in relevant part:

"Within 30 days after receiving the findings of fact and recommendation of the Board of Appeals and all other boards or commissions with authority to consider the application, the application for special use permit shall be placed on the Village Council's agenda for consideration.  By a majority vote of the Village Council, the Village Council, in the exercise of its discretion, may grant, deny or modify the special use application, or may return the matter to the Board of Appeals for further consideration and findings. ***

The Village Council, in all cases, may apply such 

stipulations, conditions or restrictions as it deems necessary to assure the protection of the public health, safety, comfort, morals or general welfare, and compliance with the standards as set forth in this chapter and, if any, in the district regulations.  Further, the Village Council may require such evidence and guarantees as it may deem necessary to assure compliance with such stipulations, conditions or restrictions."  Village of Winnetka Zoning Ordinance 

§ 17.56.010 (G) (2001).        

In this case, the record shows that the Winnetka Zoning Board conducted a public hearing that included meetings on June 11 and 28, 2001, on the Historical Society's application and the applicability of the Village's Zoning Ordinance that governs special use permits.  These meetings included testimony and reports from appraisers for both the Historical Society and for the plaintiffs.  Dan McCain testified and prepared reports on behalf of the Historical Society, in support of its position that the proposed use of the 411 Linden property would not have an adverse effect on the surrounding property values.  Kevin Byrnes testified and presented reports on behalf of the plaintiffs, in which he criticized McCain's analysis and concluded that McCain failed to show that the proposed special use would not substantially impact property values in the immediate vicinity.

Following these meetings, the zoning board voted to recommend to the Village council both the variation and special use permit requested in the Historical Society's application.  The zoning board specifically found:

"2.  The special use will not either substantially diminish or impair property values in the immediate vicinity, or be substantially injurious to the use and enjoyment of land in the immediate vicinity for uses permitted by right in that zoning district; testimony provided did not establish that there would be any diminution of property values, and no conclusion could be reached that there would be a substantial diminution of property values.

3.  The special use will not impede the normal and orderly development and improvement of other property in the immediate vicinity for uses permitted by right in the zoning district; there was found to be no impact on the character of the neighborhood and no alteration to the continued use and enjoyment of the immediate neighborhood as a single family residential area." 

All recommendations and findings and all recorded material were forwarded to the Village council.  On July 16, 2001, the day before the Village council's first meeting, the Historical Society's appraiser submitted a two-page addendum to his report dated June 19, 2001, that included a reference to the recent sale of property located directly across the street from the 411 Linden property.  The record shows that the Village council subsequently approved the Historical Society's application for a special use permit and setback variation based on the zoning board's recommendation.  Plaintiffs argue that the Village Council improperly conducted a public meeting in which it heard additional evidence before making its determination.  

Pursuant to the Winnetka Zoning Ordinance, the Village council has the exclusive authority to approve, deny or modify special use permits in the Village or may return the matter to the Zoning Board for further consideration and findings. Village of Winnetka Zoning Ordinance § 17.56.010(G)(2001).  As the trial court noted, plaintiffs have failed to show that any provision of the Winnetka Zoning Ordinance prohibited the Village council from conducting a public meeting on the special use permit.  Rather, the Zoning Ordinance outlines the role of the subordinate zoning boards in the Village council's review process, which is not jeopardized by the Village council conducting its affairs in a public hearing under the Village's Zoning Ordinance.  The zoning board performed its fact-finding function pursuant to the Zoning Ordinance and then submitted its recommendation in favor of the Historical Society's application.  The Village council subsequently granted the application based upon the zoning board's recommendation, but with certain restrictions and conditions on the use, as the council was authorized to do so by the Zoning Ordinance. 

In addition, the record shows that during the Village council's meeting, an attorney on behalf of plaintiffs, Daniel Kinsella, requested the opportunity to have plaintiffs' appraiser speak before the council and submit other written materials concerning property values.  The Village council granted Kinsella's request and plaintiffs' appraiser addressed the council and submitted an additional report.  Kinsella also asked the Village council to appoint a consultant or undertake its own investigation to study several potential alternative sites.  The council again granted Kinsella's request and conducted a factual study on alternative sites.  Plaintiffs cannot complain of error which they induced the court to make or to which they consented.  
In re Detention of Swope
, 213 Ill. 2d 210, 217 (2004). 

Plaintiffs also rely on the holding in 
People ex rel. Klaeren v. Village of Lisle
, 202 Ill. 2d 164 (2002), in support of their argument that the council's hearings were procedurally defective where they were denied the right to cross-examine a witness at the Village council hearing.  Plaintiffs argue that at the first council meeting on July 17, 2001, the Historical Society presented an addendum to McCain's report and plaintiffs were unable to cross-examine McCain, who was not present on that date.  

In 
Klaeren
, the defendant Meijer, Inc., entered into a contract to purchase a 60-acre parcel to be annexed to the Village of Lisle.  Meijer, Inc., then applied for rezoning of the parcel of land from residential to commercial and for special uses for a planned unit development and for a gasoline service station.  A joint one-day public hearing of the village board, the plan commission, and the zoning board of appeals was held on the application at issue.  At the beginning of the hearing, the mayor stated:

" 'This is a public hearing.  It is not a debate.  There will be no attempt at tonight's hearing to 

answer any question raised by the audience.' "

Klaeren
, 202 Ill. 2d at 168.

The mayor also limited audience comments to two minutes each.  The public hearing proceeded with the applicant's presentation, which lasted approximately 2 hours and 20 minutes.  The public comment portion then began with no fewer than 47 persons speaking at the public hearing.  On at least five occasions the chair cut off the speaker, and on other occasions, the chair warned the speaker of the approaching two-minute deadline.  In response to a question from an opponent of the project, the mayor advised that only a single representative would be allowed to speak on behalf of any group or organization and that the two-minute time limit would be enforced.

Following the joint public hearing, plaintiffs filed a complaint, seeking, among other relief, an injunction to prevent a vote approving the annexation, rezoning, and special use.  Testimony before the circuit court on the hearing for preliminary injunction established that subsequent meetings of the plan commission and the zoning board of appeals were public meetings, not public hearings, and that no public participation was allowed.  One of the witnesses at the preliminary injunction hearing testified that he wanted to ask questions at the public hearing but did not do so because the chair stated that there would be no questions from the audience.  A second witness testified that he was prevented from bringing posters of a Meijer store in another state to show the joint boards.  The trial court entered a preliminary injunction and ordered that no further action be taken on the Meijer site until further order of the court or until the village held a proper public hearing on the matter.  The appellate court affirmed the trial court and our supreme court affirmed both courts.

Our supreme court first addressed the question of who has the right to appear and cross-examine witnesses at a zoning hearing.  The supreme court agreed with the appellate court's determination that "any increase in noise, traffic or light pollution created by the development would affect the use and enjoyment of plaintiffs' properties in a manner distinct in both quantity and quality from any injury suffered by the public as a whole."  
Klaeren
, 202 Ill. 2d at 176.  The supreme court then determined that the zoning hearing concerning the special use petition was an administrative hearing where municipal bodies act in a quasi-judicial capacity.  
Klaeren
, 202 Ill. 2d at 183.  The court concluded that for those who qualified as "interested parties," a constitutional due process right is "normally granted to individuals whose property rights are at stake."  
Klaeren
, 202 Ill. 2d at 183.  The court pointed out that the extent of those rights depends upon the purpose of the hearing:

" '"Due Process" ' is an elusive concept.  Its exact boundaries are undefinable, and its content varies according to specific factual contexts.  Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process." "  
Klaeren
, 202 Ill. 2d at 184, quoting 
Hannah v. Larche
, 363 U.S. 420, 442, L. Ed. 2d 1307, 80 S. Ct. 1502 (1960).

The court further noted that "due process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand."  
Klaeren
, 202 Ill. 2d at 184, relying on 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 92 (1992).  The supreme court concluded that the particular situation in 
Klaeren
 demanded more than what was afforded under the procedure set forth by the mayor during the joint hearing.  The court held: 

"The village board was gathering facts to 

evaluate the proposed annexation.  The plan 

commission was considering Meijer's proposed 

development plan and determining whether to 

recommend that plan to the village board. The 

zoning board was, likewise, assessing the 

special use and rezoning requests with an eye 

toward whether to recommend that the village 

board grant the requests.  Since the joint 

procedure used by the village involved a special 

use request, it would be a denial of due process 

not to afford interested parties the right to 

cross-examine adverse witnesses."  
Klaeren
, 202 

Ill. 2d at 185.

In this case, at the first meeting of the Village council, the Village's attorney stated that the hearing was "quasi-judicial" in nature.  Unlike the one-day joint hearing in 
Klaeren
, the record shows that there were proceedings in front of the design commission and the plan commission, as well as the public hearing before the ZBA.  Also, unlike 
Klaeren
, plaintiffs in this case where not limited to two minutes to present their case or denied the right to bring forth evidence.  Rather, plaintiffs had opportunities to present their evidence and challenge the Historical Society's evidence during the numerous hearings.  Plaintiffs were permitted to cross-examine McCain at the ZBA meeting on June 28, 2001, and Kinsella questioned McCain about his prior testimony on June 11 and 28, 2001, and his written report.  Also, at the July 17, 2001, council meeting, plaintiffs' appraiser, Byrnes, presented his analysis of McCain's report.  In addition, plaintiffs submitted briefs to the plan commission and ZBA.  Our supreme court specifically noted in 
Klaeren
 that "the right [to cross-examination] is not unlimited and may be tailored by the municipal body to the circumstances specifically before it."  
Klaeren
, 202 Ill. 2d at 185.  In this case, the fairness standard was met where plaintiffs were provided opportunities to present their case and cross-examine the Society's witness. Furthermore, the record does not indicate that plaintiffs requested the right to further cross-examine McCain regarding the addendum to his report at the Village council sessions.  Unlike 
Klaeren
, 202 Ill. 2d at 178, the evidence in this case does not indicate that such a request would have been futile, where the Village in this case continuously considered and granted many of plaintiffs' prior requests. 

Plaintiffs further argue that after enacting Ordinance MC-10-2001 to define "nonessential public use" as a use affecting the public regardless of ownership, the Village council should have returned the application to the ZBA to hold a hearing, develop a record and make findings that the Historical Society qualified under this definition.  

The record shows that the phrase "nonessential public use" was undefined at the time the Historical Society submitted its application and the ZBA hearings were held.  The council amended the Zoning Ordinance on November 20, 2001, by Ordinance MC-10-2001, to define "nonessential public use" as a use affecting the public regardless of ownership.  Later, at the same meeting, the Village council enacted Ordinance M-28-2001, granting the special use to the Historical Society and referring to the Zoning Ordinance as amended by Ordinance MC-10-2001 for determining that the Historical Society constitutes a "nonessential public use" for purposes of section 17.56.010(B) of the Zoning Ordinance.  

Plaintiffs argue that, after amending the Zoning Ordinance, the Village council was required to refer the matter to the ZBA.  The Winnetka Zoning Ordinance specifically grants the Village council the authority to determine what constitutes a "nonessential public use."  Section 17.56.010(B) of the Zoning Ordinance provides that "[n]onessential public uses, as determined by the Village Council, shall be permitted uses in all districts within the Village, subject to complying with the procedures and standards of this Section 17.56.010." Village of Winnetka Zoning Ordinance § 17.56.010 (B) (2001).  We therefore reject plaintiffs' argument where the Village council had the authority to determine the definition issue and no additional evidentiary hearing was required by the Zoning Ordinance.  Moreover, there is a sufficient factual basis in the record to support the Village council's finding that the Historical Society is a nonessential public use affected with the public interest under the Zoning Ordinance's definition.  These findings include the Village's relationship with the Historical Society while it occupied space at the Winnetka public library and then while it occupied space at the Skokie School.  The record also shows that the Village also appropriated funds for the Society's operations in the past.  

   B.  The Village Council's Approval of the Special Use Permit

Plaintiffs next contend that the trial court's grant of summary judgment should be reversed where the findings and conclusions of the Village council are contrary to the manifest

weight of the evidence. 

A common law writ of 
certiorari
 is a general method for obtaining court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law (735 ILCS 5/3-101 
et
 
seq
. (West 2002)),  and provides for no other form of review.  
Dubin v. Personnel Board of the City of Chicago
, 128 Ill. 2d 490, 497-99 (1989).  The standards of review under a common law writ of certiorari are essentially the same as those under the Administrative Review Law.  
Smith v. Department of Public Aid
, 67 Ill. 2d 529, 541 (1977).  

In an administrative review proceeding, the circuit court and the appellate court are limited to a consideration of the record to determine whether the findings and conclusions of an administrative agency are against the manifest weight of the evidence
.  
Leong v. Village of Schaumburg
, 194 Ill. App. 3d 60, 65 (1990); 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88 (1992).  The findings and conclusions of the administrative agency on questions of fact are accepted as 
prima
 
facie
 true and correct.  735 ILCS 5/3-110 (West 2002); 
Leong
, 194 Ill. App. 3d at 64.  Those findings and conclusions are to be upheld on review, unless they are against the manifest weight of the evidence.  
Abrahamson
, 153 Ill. 2d at 88.  Administrative decisions are against the manifest weight of the evidence when the court, viewing the evidence in light most favorable to the administrative agency, determines that no rational trier of fact could have agreed with the agency's decision and that an opposite conclusion is clearly evident.  
City of Freeport v. Illinois State Labor Relations Board
, 135 Ill. 2d 499, 507 (1990); 
Krocka v. Police Board of the City of Chicago
, 327 Ill. App. 3d 36, 46 (2001).  

In addition, it is not the function of either the circuit court or the appellate court to reweigh the evidence or assess the credibility of the witnesses.  
Leong
, 194 Ill. App. 3d at 64-65.  Rather, as the fact finder, the agency has the responsibility to hear the testimony of the witnesses, to determine their credibility, to weigh the testimony of each witness, and then to draw reasonable inferences from all the evidence.  
Weinstein v. Zoning Board of Appeals
, 312 Ill. App. 3d 460, 466 (2000).

Plaintiffs specifically object to the Village council's findings that: (1) the neighboring property values would not be substantially diminished; (2) adequate measures will be taken to minimize traffic congestion on public ways; and (3) adequate parking facilities exist or would be provided.

A review of the record shows that there is sufficient evidence to support the Village council's finding that the special use will not substantially diminish neighborhood property values.  McCain provided both testimony and expert written reports that support the council's findings.  On June 11, 2001, McCain testified before the ZBA that he had compared the Historical Society's proposed use to other low-intensity institutional uses in similar locations and found that the institutional use did not suppress the average price of neighboring properties.  McCain concluded that there would be no effect on property values if the Society was granted the special use permit.  McCain also submitted a written report to the ZBA, in which he detailed a "paired sales analysis" of four sets of homes and analyzed two pending transactions near the 411 Linden property.  McCain concluded that the "proposed use by the Winnetka [Historical] Society does not alter the make up of the neighborhood in any significant manner, or reduce the market value of the neighboring residences."  McCain testified before the ZBA again on June 28, 2001, that the proposed use of the 411 Linden property would not affect neighboring property values.  We therefore find that the council's determination is not contrary to the manifest weight of the evidence where there is credible evidence in the record to support the council's determination.  See 
Abrahamson
, 153 Ill. 2d at 88.   

Plaintiffs argue that the Village council failed to consider their expert's statements that show inconsistencies and flaws in McCain's methodology.  However, conflicting evidence in the record, by itself, is not a sufficient or determinative basis upon which to reverse the Council's determination.  See 
Suburban Downs, Inc. v. Illinois Racing Board
, 316 Ill. App. 3d 404 (2000).  

We also find that there is evidence to support the Village's finding that adequate measures will be taken to minimize traffic congestion on public ways.  The Village's engineer and director of public works submitted a report, in which they concluded that the Society's planned use "does not pose congestion or safety hazards in the public streets adjacent to the site."  The plan commission's prior studies also showed that Linden Street is a "collector street" that was designated a heavily traveled roadway.  Witnesses for the Society also testified before the ZBA that they expected no more than three visitors per day to the museum, except during infrequent special events.  

Finally, we find that the record contains sufficient evidentiary support for the Village's finding that adequate parking facilities exist or will be provided.  The Society presented evidence before the ZBA that the driveway at the 411 Linden property would accommodate the vehicles of the expected three public visitors per day.  The Society also presented evidence that it made arrangements for visitors to use the parking lots of the nearby church and public library.  

    

C.  Alleged Conflict of Interest on the Part of 

Village Trustee

Plaintiffs next contend 
that approval of both ordinances was infected by a conflict of interest on the part of a Village trustee. 

A conflict of interest does not exist merely because a decision-maker's spouse is compensated for services that relate to the decision in question.  See 
Hollister v. North
, 50 Ill. App. 3d 56 (1977).  In 
Hollister
, the appellate court held that a board of education's approval of employment contracts for teachers did not involve a conflict of interest based on the fact that some of the teachers who would benefit from the new contracts were married to Board members.  
Hollister
, 50 Ill. App. 3d at 60.  The court noted that "the law provides that a married woman has the right to contract as if she were single, and a right to her earnings as her own separate property."  
Hollister
, 50 Ill. App. 3d at 60.

Similarly, in this case, plaintiffs have failed to show a conflict of interest on the part of trustee Brower merely because his wife received a realtor's commission from Coldwell Banke Brokerage North, which represented the Historical Society in the purchase of the 411 Linden property.  There is no evidence that Brower's vote to approve the special use permit and zoning variation was influenced or tainted by his wife receiving the commission.  After the Historical Society purchased the property, it submitted its application for the special use permit and variation to the Village.  There is no indication that the closing on the purchase of the property and the commission to be paid were conditioned upon receiving the zoning relief.  

In addition, the evidence showed that Ms. Brower donated the sum of $7,000 out of the $12,000 commission to the Historical Society before the matter was voted on by the Village council on November 20, 2001.  The record also shows that at a public meeting on July 17, 2001, trustee Brower disclosed his wife's involvement as a real estate broker for the Historical Society.  We therefore find that plaintiffs failed to show any evidence that the Village council's determination was impacted by a conflict of interest on the part of trustee Brower.

     D.  The Village Council's Approval of the Zoning Variation 

Plaintiffs next contend that the trial court erred in granting summary judgment where the Village council's findings and granting of the zoning variation are contrary to law.

In this case, the final decision regarding the zoning variation was rendered by the Village council's board of trustees rather than by the Zoning Board of Appeals.  The Illinois Municipal Code expressly authorizes the corporate authorities of municipalities with fewer than 500,000 residents to reserve to themselves the power to determine and approve zoning variances.  When corporate authorities elect to retain power to determine and approve zoning variances, as the Village council did in this case, that power can only be exercised through adoption of ordinances.  65 ILCS 5/11-13-5 (West 2002).  The enactment of an ordinance is a legislative act that, unlike a special use permit, is not subject to Administrative Review Law.  
Hawthorne v. Village of Olympia Fields
, 204 Ill. 2d 243, 253 (2003).

As the court in 
Hawthorne
 explained:

"In this regard, the case before us here is 

distinguishable from our recent decision in 
People 

ex rel. Klaeren v. Village of Lisle
 (citation 

omitted).  [
Klaeren
] involved a special use permit, 

not an application for a variance. Illinois law makes 

a clear distinction between variances and special uses.   Variances come into play where the desired use is 

forbidden under existing zoning ordinances.  A special 

use, on the other hand, allows a property owner to use 

his property in a manner the zoning ordinance already address and allow.  
City of Chicago Heights v. Living

Word Outreach Full Gospel Church & Ministries, Inc.
, 

196 Ill. 2d 1, 17 (2001)."  
Hawthorne
, 204 Ill. 2d at 

253 n.2.     

   As a legislative function, zoning is "subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare."  
Thompson v. Cook County Zoning Board of Appeals
, 96 Ill. App. 3d 561, 575-7 (1981).  In ascertaining whether a particular zoning ordinance is in the interest of the public welfare, courts must determine each case upon its own facts.  Where there is room for a legitimate difference of opinion concerning the reasonableness of a particular zoning ordinance, the finding of the legislative body will not be disturbed.  
Northern Trust Bank/Lake Forest N.A. v. County of Lake
, 311 Ill. App. 3d 332, 336 (2000).  

A legislative enactment also carries a presumption of validity that cannot be overcome unless a plaintiff establishes by clear and convincing evidence that it is arbitrary, unreasonable and without substantial relation to the public health, safety, morals, comfort or general welfare.  
LaSalle National Bank of Chicago v. County of Cook
, 12 Ill. 2d 40, 46 (1957); 
Kleidon v. City of Hickory Hills
, 120 Ill. App. 3d 1043, 1047 (1983).

There are eight factors that may be considered when determining if the party challenging a legislative enactment has met the applicable burden.  See 
Kleidon
, 120 Ill. App. 3d at 1053-54
.  These factors are: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; (6) the length of time the property has been vacant as zoned considered in the context of land development in the vicinity of the subject property; (7) the community's need for the proposed use of the property; and (8) the care with which the community has undertaken to plan its land use development.  No one factor is controlling, but the question of whether the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established is of paramount importance.  
Kleidon
, 120 Ill. App. 3d at 1053-54.

In applying these factors, we find that the trial court did not err in granting summary judgment where plaintiffs have failed to show by clear and convincing evidence that the issuance of the variation considered as a whole was arbitrary, unreasonable and without substantial relation to the public health, safety, moral, comfort or general welfare.  
LaSalle National Bank
, 12 Ill. 2d at 46.  

First, defendants have presented evidence that the setback variation for the expansion of the existing garage and attachment to the house at 411 Linden will not negatively impact property values and will not be inconsistent with the neighborhood.  Contrary to plaintiffs' assertion, they have not shown that storage of items in the garage is incompatible with the uses of the other residential garages in the neighborhood.  

The Historical Society has also shown that the issuance of the setback variation complies with applicable provisions of the Zoning Ordinance and Illinois Municipal Code, which require that a variation be in "harmony with [the] general purpose and intent" of the Zoning Ordinance and be justified by "practical difficulties or particular hardship." Village of Winnetka Zoning Ordinance §17.60.020 (2000); 65 ILCS 5/11-13-5 (West 2002).  One of the objectives of the Zoning Ordinance is to "foster the goals and policies of the Comprehensive Plan of the Village."  Village of Winnetka Zoning Ordinance §17.04.020(B)(1)(2000).  The comprehensive plan specifically provides that the Village's goals include "[h]elp[ing] the Winnetka Historical Society in its efforts to find a permanent home" and promoting educational and cultural development in Winnetka.  The zoning variation is therefore consistent with these goals.

We also find that the zoning variation is justified by practical difficulties or particular hardship.  The Historical Society presented evidence on the effect of the shallow rear yard at the 411 Linden property.  Without the zoning variance, the Historical Society would not be able to expand the garage to provide the necessary space to store its collection of artifacts.  The Society's ability to maintain its collection of such records and historical artifacts has been shown to be a benefit to the public.  See 
Kleidon
, 120 Ill. App. 3d at 1047.  In making such finding, we reject plaintiffs' argument that the Society cannot claim a hardship where it knew of the shallow yard and small garage when it purchased the 411 Linden property.  This court has previously held that a party's knowledge of the zoning ordinance doe not preclude a finding in his favor.  
Parkway Bank & Trust Co. v. Village of Norridge
, 106 Ill. App. 3d 350, 353 (1982); see also 
DeMarie v. City of Lake Forest
, 93 Ill. App. 3d 357, 363 (1981) (finding defendant's argument that the plaintiffs created their own dilemma since they knew what the zoning was when they purchased the property unpersuasive).  Accordingly, we conclude that plaintiffs have failed to present sufficient evidence to overcome the presumption of validity that attached to the Village's legislative act granting the zoning variation and enacting Ordinance M-28-2001.    

E.  Plaintiffs Constitutional Challenge to Ordinance MC-10-2001

Plaintiffs lastly contend that the trial court erred in dismissing count II of their complaint, which alleged that the Village council's amendment to the Zoning Ordinance defining "nonessential public use" is unconstitutionally vague. 

A zoning ordinance is presumptively valid, and the burden is on the party challenging its validity to prove that it is unconstitutional.  
Hewette v. Carbondale Zoning Board of Appeals
, 261 Ill. App. 3d 803, 809 (1994).  To succeed on a claim that a law or regulation is, on its face, unduly vague in violation of due process, the complainant must demonstrate that the law or regulation is impermissibly vague in all of its applications.  
Hewette
, 261 Ill. App. 3d at 809.  A zoning ordinance will be upheld as a proper exercise of the police power if it bears any substantial relationship to the health, safety, comfort, or welfare of the public.  
Hewette
, 261 Ill. App. 3d at 809.  The test for determining whether an ordinance is unconstitutionally vague is whether men of ordinary intelligence must guess at its meaning.  
Lakin v. City of Peoria
, 129 Ill. App. 3d 651, 656 (1984).

The Village's Ordinance MC-10-2001 amended the Zoning Ordinance by providing the following definition:

"'Nonessential public use' means a use affected with the public interest, regardless of ownership, except that the term nonessential public use shall not include essential public uses."  Village of Winnetka Municipal 

Ordinance MC-10-2001 (2001).

Plaintiffs argue that this definition of "nonessential public use" exceeds what is permitted by the Illinois Municipal Code and is overly broad.  We disagree.

Contrary to plaintiffs' contention, the Illinois Municipal Code (Code) authorizes municipalities to pass ordinances to provide for the classification of special uses.  The Code provides in relevant part:

"
The corporate authorities of any municipality may in its ordinances passed under the authority of this Division 13 provide for the classification of special uses. Such uses may include but are not limited to public and 
quasi-public uses affected with the public interest
, uses which may have a unique, special or unusual impact upon the use or enjoyment of neighboring property, and planned developments." (Emphasis added.) 65 ILCS 5/11-13-1.1 (West 2002).

Plaintiffs have failed to show that the Village's use of the language provided in the Code to define a special use exceeded the Village's authority or that such definition is unduly vague.  In addition, other municipalities in Illinois have adopted the language provided in the Code to describe a permitted special use.  See 
City of Des Plaines v. Metropolitan Sanitary District
, 124 Ill. App. 2d 301, 308 (1970), 
reversed on other grounds
, 48 Ill. 2d 11 (1971) (ordinance allows special use when the proposed use is affected with the public interest); 
Schmeisser v. Village of Niles
, 113 Ill. App. 2d 114, 116 (1969) (ordinance allows special use for uses affected with the public interest).

 Furthermore, in 
Homeowners Organized to Protect the Environment, Inc. v. First National Bank of Barrington
, 167 Ill. App. 3d 714, 732 (1988) (H.O.P.E., Inc.), quoting Lake Barrington Zoning Ordinance § 1605 (1986), this court upheld a municipality's zoning ordinance that permitted a special use for " 'uses traditionally affected with a public interest.' "  In doing so, this court noted that the zoning ordinance contained adequate standards in determining whether a special use should be granted and that there had been no showing that the standards were contrary to statute or constitutional mandate.  
H.O.P.E., Inc.
, 167 Ill. App. 3d at 732.  Similarly, in this case, plaintiffs have failed to show how the Village's enactment defining a nonessential public use as "a use affected with the public interest" is constitutionally vague or a violation of the Code.

III. Conclusion

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County. 

Affirmed.

REID, P.J., and THEIS, J., concur.